**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| STATE OF CONNECTICUT,<br><br>*Plaintiff*,<br><br>v.<br><br>U.S. DEPARTMENT OF THE INTERIOR, DOUG BURGUM, BUREAU OF INDIAN AFFAIRS, BRYAN MERCIER, ERIC WILCOX,<br><br>*Defendants.* | Case No. 3:25-cv-00580-VDO |

**REPLY MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION**

Plaintiff State of Connecticut misconstrues both the substance and sufficiency of the Mashantucket Pequot Tribal Nation's ("Tribe") motion for reconsideration. Plaintiff's arguments are red herrings. Plaintiff's own filings conclusively establish that the Tribe submitted each of its land-into-trust applications for the parcels at issue on the understanding that Section 9 of the Mashantucket Pequot Indian Claims Settlement Act (the "Settlement Act"), Pub. L. No. 98-134, 97 Stat. 851 (1983) (formerly codified at 25 U.S.C. § 1751 *et seq.*), extends the Secretary's land-into-trust authority under Section 5 of the Indian Reorganization Act ("IRA"), 25 U.S.C. § 5108, to the Tribe consistent with the Supreme Court's holding in *Carcieri v. Salazar*, such that the Tribe need not separately establish that it was "under federal jurisdiction" in 1934. 555 U.S. 379, 392 & n.6 (2009); *see* ECF No. 1-1 at 5–6, 15–16.

Thus, when the Eastern Regional Director cited Section 5 of the IRA in granting each of the Tribe's applications, *see* ECF No. 1-1 at 108, 118, the Eastern Regional Director indicated that the "agency's path to its conclusion" was that Section 9 of the Settlement Act extended Section 5 of the IRA to the Tribe. *Town of Southold v. Wheeler*, 48 F.4th 67, 77 (2d Cir. 2022) (quoting

*Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007)). Moreover, it is blackletter law that "an agency's action must be upheld, if at all, on the basis articulated by the agency itself," and Interior has not in connection with the final agency actions at issue assessed the separate and distinct question of whether the Tribe was under federal jurisdiction in 1934. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). In this vein, the Supreme Court has admonished that it is inappropriate for courts to decide an issue "in the first instance and without prior resolution of the questions by the relevant administrative agency," including an "initial determination of the statutory interpretation question and its application to th[e] case" at hand. *Negusie v. Holder*, 555 U.S. 511, 524 (2009). That impropriety is especially poignant in this statutory context, where Interior engages in a complex factual inquiry in determining whether a tribe was "under federal jurisdiction" in 1934 within the meaning of the IRA. *See generally*, Hilary C. Tompkins, Solic. of the Interior, U.S. Dep't of the Interior, *The Meaning of "Under Federal Jurisdiction" for Purposes of the Indian Reorganization Act*, Sol. Op. M-37029 (2014).

Contrary to Plaintiff's suggestion, *see* ECF No. 53 at 6–7, the Tribe is not attempting to assert this alternate ground supporting the application of the Secretary's land-into-trust authority in the context of this litigation as a basis to uphold the decision below; rather, the Tribe simply wants to correct the record and ensure that in future proceedings, the argument that it was under federal jurisdiction in 1934 is available and can be asserted and supported as necessary.

Moreover, despite Plaintiff's attempts to contort the standard on a motion for reconsideration, the fact remains that neither the Tribe nor Defendants conceded that the Tribe cannot establish that it was under federal jurisdiction in 1934. Nothing in *Connecticut ex rel. Blumenthal v. U.S. Dep't of the Interior* 228 F.3d at 82 (2d Cir. 2000), suggests as much. To the contrary, the district court there had expressly held that it was "unnecessary" to consider the

plaintiffs' claims that "the Mashantucket Pequot Tribe of Indians are not 'Indians' as that term is used in the IRA," that is, that the Tribe was not under federal jurisdiction in 1934, because of the alternative basis for ruling in the plaintiffs' favor that the Second Circuit subsequently rejected. *Connecticut ex rel. Blumenthal v. Babbitt*, 26 F. Supp. 2d 397, 399 n.1 (D. Conn. 1998).

In attempting to litigate the question of the Tribe's status in 1934 here, Plaintiff both ignores the dispositive, threshold reality that the question is not properly before this Court and offers a remarkably one-sided view of legislative history that preceded the Settlement Act. *See* ECF No. 53 at 4. Indeed, Congress and Interior in 1983 expressly recognized that the Tribe's federal acknowledgment petition, which was pending when Congress enacted the Settlement Act, "disclosed no impediments to federal recognition," S. Rep. No. 98-222, at 17 (1983), and the contemporaneous regulations governing federal recognition required a petitioning tribe to have "been identified from historical time until the present on a substantially continuous basis," as established in part through "repeated identification by Federal authorities," 25 C.F.R. § 83.7 (1983); *compare id. with* Sol. Op. M-37029, at 18 (requiring a showing that "the United States had … taken an action or series of actions – through a course of dealings or other relevant acts for or on behalf of the tribe or in some instance tribal members – that … generally reflect federal obligations, duties, responsibility for or over the tribe by the Federal government"). Plaintiff's attempts to misconstrue and cherry-pick historical evidence only further underscores why Interior should decide the question in the first instance.

Finally, Plaintiff adds a makeweight argument that the Tribe failed to separately file its argumentation in support of its motion as a standalone memorandum of law. *See* ECF No. 53 at 6. While counsel for the Tribe apologizes to the Court for any formalistic oversight in this regard, which will not recur, the reality is that the Tribe clearly included its factual and legal authority in

the one document presented to the Court. The Court has been expediting this case, and the Tribe sought to present this important matter concisely. The Tribe respectfully submits that the State's entirely formalistic argument should be given no weight in this matter where the Tribe is seeking to protect its sovereign interests as an Interested Party in this fast-moving litigation in order to correct a factual finding that could potentially prejudice the Tribe in the future if the correction is not made.

For these reasons, the Tribe respectfully requests that this Court amend its opinion to reflect that neither the Tribe nor the United States conceded that the Tribe was not under federal jurisdiction as of 1934.

Dated: July 24, 2025

Respectfully submitted,

/s/ Keith M. Harper
Keith M. Harper (*pro hac vice*)
Andrew C. DeGuglielmo (*pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
(202) 639-6000 (phone)
(202) 639-6066 (fax)
kharper@jenner.com
adeguglielmo@jenner.com

Thomas J. Murphy (ct07959)
James J. Healy (ct28447)
COWDERY, MURPHY & HEALY, LLC
280 Trumbull Street
Hartford, CT 06103
(860) 278-5555 (phone)
(860) 249-0012 (fax)
tmurphy@cmandh.com
jhealy@cmandh.com

*Attorneys for Interested Party Mashantucket Pequot Tribal Nation*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court for the United States District Court for the District of Connecticut by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Keith M. Harper
Keith M. Harper